# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSTAFA OZAN,<br><br>                          Petitioner,<br><br>      v.<br><br>PAMELA BONDI, et al.,<br><br>                        Respondents. | Case No. 5:26-cv-159-MRA (RAO)<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [3]** |

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 3. Petitioner requests that the Court order his immediate release from custody and bar his re-detention unless and until the government proves by clear and convincing evidence that he is a flight risk or danger to the community. *Id.* at 2. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

**I.  BACKGROUND**

Petitioner Mustafa Ozan ("Petitioner") filed this habeas petition on January 14, 2026. ECF 1. The petition alleges as follows:

Petitioner is a citizen of Turkey who entered the United States on or about June 1, 2024. *Id.* ¶¶ 2, 12. The Department of Homeland Security ("DHS") released petitioner on

his own recognizance on June 3, 2024. *Id.* ¶ 2, Ex. B. The DHS Order of Release on Recognizance ("ORR") indicates that Petitioner was released under section 236 of the Immigration and Nationality Act. *Id.* ¶ 3; ECF 1-1. DHS subsequently issued Petitioner a Notice to Appear in the Los Angeles Immigration Court, commencing removal proceedings. ECF 1 ¶ 4. Petitioner filed for asylum in the United States on or about September 25, 2024, and a hearing on the merits of his application was scheduled to take place on February 27, 2027. *Id.* ¶ 5.

Petitioner at all times complied with the reporting requirements in connection with the ORR. *Id.* ¶ 6. On November 4, 2025, however, Petitioner was detained by Immigration and Customs Enforcement ("ICE") at a routine check-in. *Id.* ¶ 7. Petitioner was not given notice of ICE's intention to detain him or provided any information about why his parole or supervision was revoked. *Id.* ¶ 8. Petitioner is currently being held at the Adelanto Detention Facility in Adelanto, California. ECF 1 ¶ 12. After his re-detention, Petitioner requested a bond hearing before an immigration judge but was denied a hearing pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *Id.* ¶ 11.

In the instant TRO Application, which was filed the same day as the petition, Petitioner requests that the Court enjoin Respondents Pamela Bondi, United States Attorney General; Kristi Noem, Secretary of DHS; DHS; Warden of the Adelanto Detention Facility; and Jaime Rios, ICE Field Office Director (collectively, "Respondents" or the "government") from continuing to detain him. ECF 3 at 2. Petitioner argues that "[p]rior to his re-detention in November 2025, Petitioner had no notice of Respondents' intention to re-detain him and no opportunity to contest that action." ECF 3-1 at 12. Petitioner further claims that ICE failed to provide him with any information about why his supervision was revoked, and ICE has no particularized evidence that Petitioner is a danger to the community or a flight risk. *Id.* at 7.

On January 16, 2026, Respondents filed an Opposition to the TRO Application. ECF 7. Respondents submitted with their Opposition a declaration from Alexander Cendejas, the deportation officer who purportedly reviewed Petitioner's "A-file." ECF 7-1

1 | ("Cendejas Decl."). Cendejas claims that, on June 24, 2025, Petitioner was arrested by the
2 | Orange County Sheriff's Office, and that on June 25, 2025, Petitioner was charged with
3 | violating California Penal Code § 243(e)(1)—battery on spouse or partner. *Id.* ¶¶ 7–8.
4 | Respondents argue that the § 243(e)(1) charge constitutes a violation of the terms of
5 | Petitioner's supervision and further warrants mandatory detention under the Laken Riley
6 | Act ("LRA"), codified at 8 U.S.C. § 1226(c)(1)(E). Cendejas' declaration, however, did
7 | not attach any records of Petitioner's arrest or the charges allegedly brought against him,
8 | and Respondents did not submit any other documentation or records to corroborate these
9 | claims. A California state record search submitted by Petitioner reflects that no criminal
10 | records were found associated with Petitioner's name as of November 13, 2025. ECF 8-1.

## II.    LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131

(9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Cottrell*, 632 F.3d at 1132.

### III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his procedural due process claim, and that the balance of hardships tips sharply in his favor.

#### A. Likelihood of Success on the Merits

It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same). The government does not dispute this.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), when determining what process is required before the government may impair a protected interest, the Court must weigh (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests.

The government does not argue that the *Mathews* test does not apply or deny that the test has been used to address due process claims raised by noncitizens. The government also does not argue that Petitioner does not have constitutional procedural due process rights. In other words, the government does not seem to dispute that Petitioner's private interest in freedom from detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Instead, the government first argues that Petitioner is subject to mandatory detention

1  under the LRA because he was charged with violating California Penal Code § 243(e)(1).
2  ECF 7 at 3–4.  The LRA mandates detention for a noncitizen who: "(i) is inadmissible
3  under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged
4  with, is arrested for, is convicted of, admits having committed, or admits committing acts
5  which constitute the essential elements of any burglary, theft, larceny, shoplifting, or
6  assault of a law enforcement officer offense, or any crime that results in death or serious
7  bodily injury to another person[.]"  8 U.S.C. § 1226(c)(1)(E)(i)–(ii).  The government
8  contends that Petitioner's alleged violation of California Penal Code § 243(e)(1) is a
9  "serious crime that constitutes the essential elements of an enumerated offense," thereby
10 subjecting Petitioner to mandatory detention under the LRA.  ECF 7 at 5.

11      There are at least two fatal flaws with this argument.  First, it is supported only by
12 the hearsay statements of Cendejas, the deportation officer who claims to have reviewed
13 Petitioner's A-file.  *See* ECF 7-1.  The government made no attempt to submit any records
14 of Petitioner's arrest or charging documents that would corroborate Cendejas' assertions
15 or otherwise confirm that Petitioner was in fact arrested and charged with that criminal
16 offense.  Indeed, the *only* documentary evidence before the Court is a certified name check
17 from the Orange County Superior Court, which reflects that no criminal cases were filed
18 against Petitioner as of November 13, 2025.  ECF 8-1.

19      Second, although the government argues that Petitioner was "charged with having
20 committed a serious crime that constitutes the essential elements of an enumerated offense
21 and is now subject to mandatory detention" pursuant to the LRA, it fails to identify which
22 "enumerated offense" in the LRA Petitioner supposedly violated.  The LRA mandates
23 detention for noncitizens charged with or arrested for "acts which constitute the essential
24 elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer
25 offense, or any crime that results in death or serious bodily injury to another person."  8
26 U.S.C. § 1226(c)(1)(E)(i)-(ii).  Without any records or other reliable evidence to
27 substantiate Respondents' claim that Petitioner committed any criminal offense, the Court
28 cannot even assume, much less determine, that the allegedly charged crime implicates the

LRA at all. "Put another way, because there is no indication that Petitioner's arrest was necessarily for a crime that caused *serious* bodily injury, the Laken Riley Act does not control." *M.V.F. v. Santacruz*, No. 2:25-CV-11700-MEMF-E, 2025 WL 3691419, at *8 (C.D. Cal. Dec. 19, 2025).

The government further argues that Petitioner's detention is lawful because "the government's authority to re-detain individuals previously released on parole by ICE is discretionary," and that the statute does not require advance notice or a hearing before arrest or re-detention. ECF 7 at 4. "But the government understates the nature of the liberty interest [at stake], as well as the degree to which existing procedures protect against the erroneous deprivation of that liberty interest." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Civil immigration detention, which is "nonpunitive in purpose and effect," is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. In releasing Petitioner on his own recognizance, the government necessarily determined that he was not a flight risk or danger. *See* 8 C.F.R § 1236.1(c)(8) (authorizing release of noncitizens under § 1226(a) if an officer determines that they "would not pose a danger to property or persons," and are "likely to appear for any future proceeding"); 8 C.F.R. § 212.5(b) (authorizing parole from custody of noncitizens deemed "neither a security risk nor a risk of absconding."); *see also Saravia*, 280 F. Supp. 3d at 1176 (explaining that "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *2 n.1 (E.D. Cal. July 11, 2025) (same); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *17 (E.D. Cal. Oct. 16, 2025) (same). Thus, to re-detain Petitioner following release, the government must present "evidence of materially changed circumstances— namely, evidence that the noncitizen is in fact dangerous or has become a flight risk or is now subject to a final order of removal." *Saravia*, 280 F. Supp. 3d at 1176.

Here, the government again relies on Cendejas' declaration and the assertion

contained therein that Petitioner was charged with a criminal offense under California law. ECF 7 at 5. As stated above, that assertion is not corroborated by any records or other reliable evidence. Even if the Court credits the government's claim that Petitioner violated the conditions of his release, section 1226(a)'s implementing regulations require release of a detained noncitizen unless the noncitizen poses a danger to the community or is a flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196–97 (9th Cir. 2022); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) ("The upshot of these regulations is that detention is permitted under section 1226(a) only if [petitioner] is dangerous or a flight risk."). The government makes no effort to show that Petitioner is a flight risk or danger to the community. *See generally* ECF 7. Although the government leans on its (unsupported) claim that Petitioner was charged with a single criminal offense, it does not articulate how that offense makes Petitioner dangerous or a flight risk and therefore justifies his re-detention. This is significant when the government does not otherwise dispute that Petitioner was compliant while on supervision and attended his regular check-ins, which would support a finding that he is not a flight risk.

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025). Where an individual has not received a bond or redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh*, 2025 WL 1918679, at *7. Here, Petitioner argues that the risk of erroneous deprivation is high because, after ICE issued the ORR based on a determination that he was not a flight risk or danger, he was re-detained without any opportunity to contest that action. The government does not directly address these arguments, focusing instead on what it considers the proper scope of relief: eligibility for a bond hearing while Petitioner is in custody. ECF 10 at 6–8. The government perplexingly states that if there was some defect in the revocation of Petitioner's status pursuant to the ORR, the correct remedy would be for Petitioner to seek a bond hearing consistent with his rights as a detainee. ECF 7 at 5. Elsewhere, the government claims

that if Petitioner wanted a bond hearing under § 1226(a), "he should ask for it." *Id.* at 7. But in the same breath, the government acknowledges that Petitioner *did* ask for a bond hearing and was denied one based on the immigration judge's erroneous conclusion that she lacked jurisdiction to grant bond. *See* Cendejas Decl. ¶ 15 ("OZAN requested a bond hearing before an Immigration Judge."); ECF 1 ¶ 11; *see also Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (vacating DHS Policy subjecting noncitizens arrested in United States to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)). Thus, it appears the government—based on this circular logic—would have petitioners like Mr. Ozan detained in a perpetual state of limbo—not able to seek neither bond nor their release without court intervention.

The government also relies on two district court cases, where petitioners were not immediately released after they were re-detained. *See Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540, at *1 (W.D. Wash. Dec. 4, 2018), *report and recommendation adopted*, No. C18-287-JLR, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *9 (D. Mass. Oct. 1, 2018). Those cases are entirely distinguishable. Unlike here, the petitioners in those cases were subject to final orders of removal, and their detention was governed by 8 U.S.C. § 1231. *See Ahmad*, 2018 WL 6928540, at *5; *Doe*, 2018 WL 4696748, at *7–8. While the post-removal regulations require an opportunity to be heard in the form of an informal interview, the court in each case found that any failure to follow immigration regulations did not result in any actionable injury because removal was reasonably foreseeable. Specifically, in *Ahmad*, ICE had procured a travel document and scheduled the removal. *Ahmad*, 2018 WL 6928540, at *5. Similarly, in *Doe*, the underlying removal order was valid, removal was imminent, and the court found that there was no evidence of an actionable violation of a regulation. *Doe*, 2018 WL 4696748, at *9. Here, by contrast, the government concedes that Petitioner's detention is governed by 8 U.S.C. § 1226, which means Petitioner is not subject to a final order of removal, and removal is not imminent. Thus, not only are these cases non-binding, but they are also inapposite.

In addition, the government presents no countervailing interest in re-detaining Petitioner without a pre-deprivation bond hearing. Custody hearings are "routine and impose a 'minimal' cost." *Singh*, 2025 WL 1918679, at *8 (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). Moreover, a pre-deprivation bond hearing would not have interfered with removal proceedings. Petitioner was scheduled for his merits hearing before an immigration judge on February 27, 2027. ECF 1 ¶ 5. "And detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros*, 2025 WL 2637503, at *12 (citing *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025)).

Thus, based on the record before the Court, each *Mathews* factor favors Petitioner and demonstrates that he is likely to succeed on the merits or at least has demonstrated serious questions going to the merits of his procedural due process claim—*i.e.*, that he is entitled to a bond hearing before a neutral arbiter prior to any re-arrest.

### B. **Irreparable Harm**

Petitioner has also established irreparable harm. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). Moreover, Petitioner alleges that his detention "is separating him from his partner who is pregnant with his child," and "is also exacerbating his pre-existing health conditions which includes pancreatitis." ECF 3-1 at 15.

### C. **Other *Winter* Factors**

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because it would be neither equitable nor in the public interest to allow the government to continue to violate federal law. ECF 3 at 15–16. The government responds that "[i]t is well settled that the public interest in enforcement of the United States's immigration laws is significant." ECF 7 at 7 (internal

citation omitted). This argument is unavailing where the potential harm to Petitioner is significant, and "Respondents risk only a short delay in detaining Petitioner if Respondents ultimately show that detention is warranted." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *8 (N.D. Cal. Aug. 21, 2025).

Moreover, the Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the Immigration and Nationality Act). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

### D. Scope of Relief

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). Petitioner seeks his immediate release. The government argues that if there was some defect in the revocation of Petitioner's parole status, the proper remedy would be to rectify the "procedural deficiency" (though the government does not suggest any precise means of doing so), or for Petitioner to seek a bond hearing. ECF 7 at 5.

For the reasons explained above, the Court is persuaded that a pre-deprivation

hearing is warranted in this case, given Petitioner's substantial liberty interests; the government's decision to re-detain Petitioner without notice or an opportunity to respond to any claim of changed circumstances requiring detention; and the government's failure to establish that Petitioner has been charged with a crime that compels mandatory detention or that he is a flight risk or danger. Numerous district courts, including this Court, have granted the same relief Petitioner seeks here. *See, e.g.*, *Garcia Mejia v. Noem*, No. 5:25-cv-03504-MRA-JDE, ECF 13 (C.D. Cal. Jan. 5, 2026); *Juarez Fernandez v. Semaia*, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 (C.D. Cal. Jan. 13, 2026) (granting immediate release where noncitizen's parole was revoked without due process); *M.V.F.*, 2025 WL 369141, at *8 (same); *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321 (S.D. Cal. Dec. 23, 2025) (same).

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

## IV. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Petitioner shall be immediately released from custody.
2. Respondents are enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing. At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community; and
3. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents shall file any written

response to the Order to Show Cause no later than **January 30, 2026**. Petitioner shall file a reply no later than **February 3, 2026**. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **January 30, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **January 21, 2026**, and expires at 5:00 p.m. on **February 4, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: January 21, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE